GORDON v SADASIVAN

Docket No. 78434. Submitted April 9, 1985, at Detroit.—Decided July
    2, 1985. Leave to appeal applied for.

Plaintiff, Stanley T. Gordon, personal representative of the estate
    of Scipio Jones, deceased, brought an action against Govindan
    Sadasivan, M.D., Chong Hoon Park, M.D., the State of Michi-
    gan, the Department of Mental Health, the Northville Regional
    Psychiatric Hospital and its director, John Reynolds. Plaintiff
    alleged that Jones, who was involuntarily committed to North-
    ville Regional Psychiatric Hospital, suffered from severe hyper-
    tension, that defendants failed to treat the condition, and that
    that failure led to a cerebral vascular accident resulting in
    Jones's death. The action against the two physicians was based
    on a claim of wrongful death; that against the other defendants
    was based upon a claimed violation of the decedent's constitu-
    tional rights pursuant to 42 USC 1983. The state of Michigan,
    Department of Mental Health, and Northville Hospital were
    dismissed. The Wayne Circuit Court, Robert J. Colombo, J.,
    granted accelerated judgment in favor of defendant Reynolds,
    finding that the circuit court lacked subject matter jurisdiction

---

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Summary Judgment § 1 *et seq.*
    See the annotations in the ALR3d/4th Quick Index under Summary
        Judgment.
[2, 3] Am Jur 2d, States, Territories, and Dependencies §§ 99-128.
    See the annotations in the ALR3d/4th Quick Index under States.
[4] Am Jur 2d, Courts §§ 12-15, 87 *et seq.*
    See the annotations in the ALR3d/4th Quick Index under Discrimi-
        nation; Jurisdiction.
[5, 6] Am Jur 2d, Civil Rights §§ 16 *et seq.*
    See the annotations in the ALR3d/4th Quick Index under Discrimi-
        nation.
[7] Am Jur 2d, Incompetent Persons §§ 31 *et seq.*
    Right to relief under Federal Civil Rights Act of 1871 (42 USCS
        § 1983) for alleged wrongful commitment to or confinement in
        mental hospital. 16 ALR Fed 440.
    Civil liability for physical measures undertaken in connection with
        treatment of mentally disordered patient. 8 ALR4th 464.

and that Reynolds was protected by governmental immunity. Plaintiff appealed from the accelerated judgment. *Held:*

1. Defendant Reynolds's allegation that the action against him is in actuality one against the state and therefore within the exclusive jurisdiction of the Court of Claims is without merit. The Court of Claims act prohibits an action in the Court of Claims where the plaintiff has an adequate remedy in the federal courts. Defendant's allegation that the plaintiff's claim is barred from federal court by the Eleventh Amendment is without merit. The Eleventh Amendment does not bar actions brought against state officials personally for deprivations of federal rights under color of state law. This case is such an action. Therefore, the Court of Claims does not have jurisdiction. Because the state and federal courts have concurrent jurisdiction over claims arising under 42 USC 1983, the action was properly brought in the circuit court.

2. A governmental official is immune under 42 USC 1983 only if the act complained of was discretionary and did not violate a clearly established constitutional right of which the defendant knew or should have known. The decedent was dependent upon the hospital personnel for medical attention and, like an inmate of a state prison, was entitled to have his medical needs met. Plaintiff's allegations were sufficient to indicate that defendant Reynolds's conduct violated a clearly established constitutional right of which a reasonable person would have known. Accelerated judgment was improperly granted.

Reversed and remanded.

1. MOTIONS AND ORDERS — ACCELERATED JUDGMENT.

The purpose of a motion for accelerated judgment is to test certain defenses, such as lack of subject matter jurisdiction, which may make trial on the merits unnecessary; the motion does not test the merits of a claim (GCR 1963, 116.1).

2. CONSTITUTIONAL LAW — ELEVENTH AMENDMENT — SUIT AGAINST STATE.

The Eleventh Amendment bars lawsuits against an unconsenting state in federal court when the state is the named party or the party in fact; whether the Eleventh Amendment applies is determined not by the mere names of the parties but by the essential nature and effect of the proceeding as it appears from the entire record (US Const, Am XI).

3. CONSTITUTIONAL LAW — ELEVENTH AMENDMENT — SUIT AGAINST STATE.

The Eleventh Amendment's prohibition on federal court lawsuits

against a state does not shield state officials from actions brought against them personally for deprivation of federal rights under color of state law (US Const, Am XI).

4. COURTS — COURT OF CLAIMS — CIVIL RIGHTS — FEDERAL COURT — CIRCUIT COURT.

The Court of Claims has no subject matter jurisdiction over a claim alleging personal liability of a state official for violation of the plaintiff's civil rights; such a claim may be brought in federal court or, because state courts have concurrent jurisdiction over federal civil rights claims, in the circuit court (42 USC 1983; MCL 600.6440; MSA 27A.6440).

5. GOVERNMENTAL IMMUNITY — TORTS — CIVIL RIGHTS.

The statutory immunity from tort liability granted to the state is limited to tort actions and is inapplicable to actions brought under federal law for violations of civil rights (42 USC 1983; MCL 691.1401 *et seq.;* MSA 3.996[101] *et seq.).*

6. GOVERNMENTAL IMMUNITY — CIVIL RIGHTS — DISCRETIONARY FUNCTIONS.

A government official performing discretionary functions generally is shielded from liability for civil damages for violation of a plaintiff's rights insofar as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

7. MENTAL HEALTH — MENTAL INSTITUTIONS — NECESSARY CARE.

A person involuntarily committed to a mental institution is, like an inmate of a state prison, entitled to necessary medical or psychological care; in order to make out a claim of civil liability for failure to provide necessary care a plaintiff must show deliberate indifference on the part of the officials and that the plaintiff's needs were serious, that is, diagnosed by a physician as mandating treatment or so obvious that even a lay person would easily recognize the necessity for a doctor's attention.

*Quentin J. Lukomski, P.C.* (by *Robert P. Young),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George L. McCargar* and *Mark S. Meadows,* Assistants Attorney General, for defendant John Reynolds.

Before: HOOD, P.J., and V. J. BRENNAN and R. M. MAHER, JJ.

Per Curiam. Plaintiff appeals as of right from an order of the trial court which granted accelerated judgment in favor of defendant John Reynolds.

This cause of action arises out of the death of plaintiff's decedent on September 28, 1981. According to plaintiff's complaint, plaintiff's decedent was involuntarily committed to Northville Regional Psychiatric Hospital on June 12, 1981. Plaintiff alleges that the employees and doctors at the hospital were aware that decedent suffered from severe hypertension at the time decedent was committed but failed to treat the condition. Plaintiff claims that the defendants' failure to furnish such care and treatment caused decedent to suffer a cerebral vascular accident ultimately resulting in decedent's death.

Plaintiff filed this suit on September 22, 1983, alleging that the defendant doctors were liable for the wrongful death of decedent and claiming damages against the State of Michigan, Department of Mental Health, Northville Regional Psychiatric Hospital, and John Reynolds, the hospital's superintendent, pursuant to 42 USC 1981 and 1983 for violations of decedent's constitutional rights. On March 8, 1984, defendants State of Michigan, Department of Mental Health and Northville Hospital were dismissed from the case.

Defendant John Reynolds brought a motion for accelerated judgment pursuant to GCR 1963, 116.1(2) and (5). After a hearing on April 27, 1984, the trial court granted accelerated judgment, finding that the circuit court lacked subject matter jurisdiction and that defendant Reynolds was protected by governmental immunity.

The purpose of an accelerated judgment motion is to test certain defenses which may make trial on the merits unnecessary. *Ceplin v Bastian-Bless-*

*ing Div of Golconda Corp,* 90 Mich App 527, 530; 282 NW2d 380 (1979). It does not test the merits of a claim. *San Joaquin County, California v Dewey,* 105 Mich App 122, 131; 306 NW2d 418 (1981). Lack of subject matter jurisdiction is an appropriate basis for accelerated judgment. *Baker v Detroit,* 73 Mich App 67, 71; 250 NW2d 543 (1976).

In the case at bar, defendant John Reynolds seeks to characterize the action against himself as an action which was in actuality one against the state and over which the Court of Claims has exclusive jurisdiction. Defendant Reynolds argues, therefore, that the circuit court lacks subject matter jurisdiction to hear plaintiff's claim.

The Legislature created the Court of Claims in 1939 and conferred upon it the following jurisdiction:

"(1) Except as provided in section 6440, the jurisdiction of the court of claims as conferred upon it by this chapter over claims and demands against the state or any of its departments, commissions, boards, institutions, arms or agencies, shall be exclusive. * * * The court has power and jurisdiction:

"(a) To hear and determine all claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the state and any of its departments, commissions, boards, institutions, arms or agencies." MCL 600.6419; MSA 27A.6419.

Section 6440 provides:

"No claimant may be permitted to file claim in said court against the state nor any department, commission, board, institution, arm or agency thereof who has an adequate remedy upon his claim in the federal courts, but it is not necessary in the complaint filed to allege that claimant has no such adequate remedy, but that fact may be put in issue by the answer or motion filed by the state or the department, commission, board,

institution, arm or agency thereof." MCL 600.6440; MSA 27A.6440.

Defendant claims that § 6440 is inapplicable to the instant action because this action is against the state and actions against the state are prohibited in federal court by the Eleventh Amendment. We disagree.

It is well established that the Eleventh Amendment bars suits against an unconsenting state in federal court not only when the state is the named party, but also when it is the party in fact. *Scheuer v Rhodes,* 416 US 232, 237; 94 S Ct 1683; 40 L Ed 2d 90 (1974). Whether the Eleventh Amendment is applicable "'is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceeding, as it appears from the entire record'". *Scheuer v Rhodes, supra,* citing *Ex parte New York,* 256 US 490, 500; 41 S Ct 588; 65 L Ed 1057 (1921).

In *Scheuer v Rhodes, supra,* the Supreme Court rejected the notion that the Eleventh Amendment shielded state officials from actions brought against them personally for deprivations of federal rights under color of state law. Citing *Ex parte Young,* 209 US 123, 159-160; 28 S Ct 441; 52 L Ed 714 (1908), the Court explained that, when a state officer acts under a state law in a manner violative of the United States Constitution, he " 'comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected *in his person* to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.' * * * (Emphasis supplied.)" 416 US 237.

In conclusion, the Court held that while the

Eleventh Amendment bars suits for recovery of damages from the public treasury, *Edelman v Jordan,* 415 US 651; 94 S Ct 1347; 39 L Ed 2d 662 (1974), "damages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office". *Scheuer v Rhodes, supra,* 416 US 238.

In reviewing the grant of accelerated judgment in the instant case, we must accept all well-pled allegations of the nonmoving party as true. *Rinaldi v Rinaldi,* 122 Mich App 391, 396; 333 NW2d 61 (1983). Applying the doctrine of *Scheuer v Rhodes,* we conclude that the instant plaintiff has alleged facts that demonstrate that he is seeking to impose individual and personal liability on the named defendant, Reynolds, not the state, for an alleged deprivation of constitutional rights under color of state law. We hold, therefore, that the Eleventh Amendment does not foreclose plaintiff from seeking a remedy for his claim in federal court. Accordingly, the Court of Claims lacks subject matter jurisdiction over this action. MCL 600.6440; MSA 27A.6440. Further, because state courts exercise concurrent jurisdiction over § 1983 claims, *Dickerson v Warden, Marquette Prison,* 99 Mich App 630, 634; 298 NW2d 841 (1980), we find that the circuit court did have subject matter jurisdiction over the plaintiff's claim. The trial court's grant of accelerated judgment on this ground is reversed.

The trial court also held that defendant Reynolds was protected from suit by governmental immunity. While the trial court failed to specify what principles of governmental immunity he applied, defendant concedes and we agree that Michigan's governmental tort liability act, MCL 691.1401 *et seq,;* MSA 3.996(101) *et seq.,* is limited to tort actions and is inapplicable to actions

brought under 42 USC 1983. See *Central Advertising Co v Novi,* 91 Mich App 303, 314; 283 NW2d 730 (1979); *Moore v Detroit,* 128 Mich App 491; 340 NW2d 640 (1983).

In *Armstrong v Ross Twp,* 82 Mich App 77, 85; 266 NW2d 674 (1978), this Court adopted the doctrines set forth by the United States Supreme Court for determining the bounds of governmental immunity under 42 USC 1983:

"Immunity from suit under 42 USC 1983 turns upon the existence of an analogous immunity provision at common law coupled with a weighing of the need for immunity as against the need to compensate plaintiffs for violation of civil rights. See, *e.g., Imbler v Pachtman,* 424 US 409; 96 S Ct 984; 47 L Ed 2d 128 (1976), *Wood v Strickland,* 420 US 308; 95 S Ct 992; 43 L Ed 2d 214 (1975), *Scheuer v Rhodes,* 416 US 232; 94 S Ct 1683; 40 L Ed 2d 90 (1974). Absolute immunity from suit has been accorded only to those officials exercising the very widest discretion and with the greatest need to be free of the possible influence of litigation. See *Imbler v Pachtman, supra* (prosecuting attorneys), *Pierson v Ray,* 386 US 547; 87 S Ct 1213; 18 L Ed 2d 288 (1967) (judges), *Tenney v Brandhove,* 341 US 367; 71 S Ct 783; 95 L Ed 1019 (1951) (state legislators). Executive officials enjoy only a qualified immunity, dependent upon the scope of discretion, responsibilities of the office, and circumstances as they reasonably appeared at the time of the action. Reasonable grounds for action and good faith belief in the propriety of the action are the basis for immunity. *Scheuer v Rhodes, supra."*

Since our decision in *Armstrong v Ross Twp, supra,* the Supreme Court has abandoned the subjective elements of the qualified immunity test in favor of the following objective standard:

"We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does

not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v Fitzgerald,* 457 US 800, 818; 102 S Ct 2727; 73 L Ed 2d 396 (1982).

Although *Harlow* was brought directly under the constitution, the Supreme Court reasoned that the same standard would apply in § 1983 actions. 457 US 818, fn 30. In light of the new standard promulgated by the Supreme Court, we hold that the defendant in the case at bar, as a lower level official in the executive branch, is immune only if the act complained of was discretionary and did not violate a clearly established constitutional right of which the defendant knew of should have known.

In his complaint, plaintiff alleged that the defendant physicians knew or should have known of the decedent's severe hypertension and that their inadequate treatment of decedent's condition resulted in his death. Plaintiff further alleged that the deliberate disregard of the decedent's well-being deprived decedent of his rights under the First, Fourth, Fifth and Fourteenth Amendments and that said deprivations resulted from:

"a formal and/or de facto policy of Defendants State of Michigan Department of Mental Health, Northville Regional Psychiatric Hospital and its superintendent, John Reynolds, of failing to care for the physical needs of inmates, of failing to provide adequate physician personnel, failure to screen physician personnel to determine their competence and performance, both before and after being engaged, and failure to monitor, discipline, and control physician personnel after derelictions in their performance became known, or should have become known.

"5. That said policy and de facto policy aforesaid, resulted in the particular derelictions of duty by Dr. Govindan Sadasivan, M.D. and Dr. Chong Hoon Park,

M.D. in failing and refusing to treat and care for Plaintiff's decedent, which failure and refusal resulted in his death."

The parties do not dispute and we agree that the act complained of was discretionary in nature. We also find that plaintiff has alleged the violation of a clearly established constitutional right of which a reasonable person would have known. In *Estelle v Gamble,* 429 US 97, 104; 97 S Ct 285; 50 L Ed 2d 251 (1976), the United States Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' * * * proscribed by the Eighth Amendment". This Court in *Brewer v Perrin,* 132 Mich App 520, 529-530; 349 NW2d 198 (1984), analyzed the Supreme Court's decision in *Estelle v Gamble, supra,* and wrote:

"Such a cause of action is allowed under § 1983 if the plaintiff alleges 'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs'. *Estelle v Gamble,* 429 US 97, 106; 97 S Ct 285, 292; 50 L Ed 2d 251, 261 (1976). Every prisoner has the right to receive medical care under circumstances in which a reasonable person would seek medical care. *Rust v Alaska,* 582 P2d 134, 143, fn 34 (Alas, 1978). Prison or jail authorities must make available a level of medical care reasonably designed to meet the inmate's routine and emergency health care needs. *Ramos v Lamm,* 639 F2d 557, 574 (CA 10, 1980), *cert den* 450 US 1041; 101 S Ct 1759; 69 L Ed 2d 239 (1981). A prisoner is entitled not only to have his physical needs met, but also to have his psychological needs met. *Inmates of Allegheny County Jail v Pierce,* 612 F2d 754 (CA 3, 1979); *Bowring v Godwin,* 551 F2d 44, 47 (CA 4, 1977).

"In evaluating a plaintiff's claim of failure to provide necessary medical care and treatment, courts use a two-step test: 'It requires deliberate indifference on the part of [the] officials and it requires the prisoner's medical

needs to be serious.' *West v Keve,* 571 F2d 158, 161 (CA 3, 1978).

"*Hendrix v Faulkner,* 525 F Supp 435, 454 (ND Ind, 1981), explained the second of these requirements: 'A medical need is serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Laaman v Helgemoe,* 437 F Supp 269, 311 (D NH, 1977).'" (Footnote omitted.)

In *Mosqueda v Macomb County Youth Home,* 132 Mich App 462, 474, fn 1; 349 NW2d 185 (1984), this Court extended the *Brewer v Perrin* rationale to an action brought by a delinquent ward of the state confined to a youth home. The Court noted that, for purposes of a § 1983 action, there were no controlling distinctions between a prisoner in a prison institution and a state ward in a youth home. Neither was allowed to leave the institution and both were dependent upon the institution personnel for medical treatment.

In the case at bar, the plaintiff was involuntarily committed to the hospital. Therefore, like a prisoner or a state ward in a youth home, he was not allowed to leave and he was dependent upon the hospital personnel for medical attention. Therefore, we would extend the rationale of *Brewer v Perrin* to § 1983 actions brought by inmates in mental institutions where it is alleged that necessary medical or psychological treatment has not been provided.

Considering all well-pled allegations in the plaintiff's complaint as true, we conclude that plaintiff has pled sufficient facts indicating that defendant Reynolds's conduct violated a clearly established constitutional right of which a reasonable person would have known. We hold, therefore, that at this stage of the proceedings qualified governmental

immunity does not shield defendant Reynolds from liability.

The grant of accelerated judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.